**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

TANNER BALL                                                                          PLAINTIFF

v.                                                      CIVIL ACTION NO. 5:26-CV-P32-JHM

JACOB BENTON et al.                                                              DEFENDANTS

<u>**MEMORANDUM OPINION AND ORDER**</u>

*Pro se* Plaintiff Tanner Ball filed this civil-rights action pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007), and upon Plaintiff's two motions for injunctive relief (DNs 7 and 13) and his motion for a temporary restraining Order (TRO) (DN 12). For the reasons set forth below, the Court will dismiss Plaintiff's complaint and deny his motions.

**I. INITIAL REVIEW OF THE COMPLAINT**

Plaintiff is a transgender inmate housed in the Kentucky State Penitentiary (KSP). He sues KSP Correctional Officer Jacob Benton, Lieutenant Abigail Nutt, Warden Laura Plappert, "UAI" Robin McCalister, and Program "UA" Brad Richie. He alleges that he has been the victim of an assault, cruel and unusual punishment, and retaliation, and that his rights under the Prison Rape Elimination Act (PREA), the "Bill of Rights #17"[1] Cruel-and-Unusual-Punishments clause, and Article 7 of the "International Covenant of Civil and Political Rights, Torture Convention" have been violated.

According to Plaintiff, Defendant Benton stated in the presence of others that Plaintiff is HIV positive, which is not true, and called Plaintiff a "faggot." He states that on October 9, 2025,

---

[1] The Court construes this reference to be to the Kentucky Constitution's Bill of Rights.

another inmate threw hot water on him causing second-degree burns which required medical attention because the inmate wanted to be removed from Plaintiff's vicinity out of fear of "catching AIDS." A week later, Defendant Benton conducted a search of Plaintiff's cell which uncovered a "dildo" made from soap, which he referred to as "'some faggot ass s**t'" and made other derogatory comments in front of inmates and staff.   He further alleged that Defendant Benton showed pictures of the item to officers on the second shift thereby violating his PREA, privacy, and Eighth Amendment rights.  Plaintiff also asserts that on December 18, 2025, while being strip-searched, a comment was made about "dildos," but does not attribute this comment to any Defendant.

Plaintiff alleges that Defendant McCalister ignored the grievance policy.  He also alleges that his letter to Defendant Plappert was ignored.

Plaintiff further alleged that he was refused "haircuts/shave process" because officers believed he was HIV positive and refused recreation and access to phone calls.  He alleges that he filed numerous grievances and was retaliated by "staff" numerous times and that, on November 16, 2025, Defendant Nutt told him if kept filing grievances on staff she would make his life "miserable."  He states that Defendant Richie took "papers" from his "1983" and told Defendant Plappert causing Plaintiff to be written up.

Plaintiff alleges that on the date he filed a grievance regarding Defendant Benton's handling of the evidence from the October 16, 2025, cell-search incident, the evidence disappeared, and the disciplinary report was dropped.

Plaintiff states that he has been ridiculed, assaulted, and harassed, causing scarring from the hot-water burns, weight-loss, and loss of appetite due to depression.  He requests compensatory and punitive damages, as well as release from segregation or transfer.

2

Plaintiff attaches a number of exhibits to the complaint. Where relevant, they are discussed below.

## A. Standard

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

## B. Analysis

### 1. Deliberate Indifference to Safety

Reading Plaintiff's complaint liberally, it appears that he seeks to bring a failure-to-protect

claim against Defendant Benton.  Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment, *Farmer v. Brennan*, 511 U.S. 825, 833 (1994), which obliges prison staff "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).  In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" officials have a duty to protect prisoners from violence perpetrated by other prisoners.  *Farmer*, 511 U.S. at 833.  To establish a violation of this right, a plaintiff must show that prison officials were deliberately indifferent to his risk of injury.  *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988).  Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff alleges no facts to support a claim that Defendant Benton knew of and disregarded a substantial risk that an inmate would assault Plaintiff with hot water because of the comments he made.  Courts have generally held that unexpected incidents are insufficient to establish a claim for deliberate indifference.  *See, e.g.*, *Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) ("Courts routinely deny deliberate indifference claims based on surprise attacks.") (citation omitted).  Plaintiff does not allege that he complained to any prison official about a threat to his safety.  Indeed, nothing in the complaint demonstrates that the assault was anything but an unexpected incident or gives any other indication that Defendant Benton knew of and disregarded a risk of harm to Plaintiff.  As such, Plaintiff fails to allege a failure-to-protect claim.

## *2. Retaliation*

To state a First Amendment retaliation claim, Plaintiff must show that: (1) he engaged in constitutionally protected conduct, (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) there is a causal connection between elements (1) and (2), meaning that the adverse action was motivated at least in part by Plaintiff's protected conduct. *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (per curiam)).

Here, regarding Defendant Benton's comments, to the extent that Plaintiff is alleging retaliation, Plaintiff fails to identify protected conduct on his part. According to the complaint, the alleged harassment, ridicule, and so forth began after Defendant Benton verbally harassed and erroneously labelled him HIV positive and continued after the search of his cell. Plaintiff identifies no protected conduct that he engaged in; possessing a contraband sex toy is not protected conduct for purposes of a retaliation claim. "[A] prisoner's violation of legitimate prison regulations is not protected conduct under the First Amendment." *Burton v. Rowley*, 234 F.3d 1267 (6th Cir. 2000); *Thaddeus-X*, 175 F.3d at 395 ("[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one."); *Tucker v. Bereezny*, No. 3:24-CV-19, 2026 WL 621551, at *2 (E.D. Tenn. Mar. 5, 2026) ("[T]he facts also suggest that Plaintiff's refusals of direct orders violated prison policy and therefore were not protected conduct.").

Plaintiff also alleges that he filed numerous grievances and was retaliated by "staff" numerous times. He also states that on November 16, 2025, Defendant Nutt told him if kept filing grievances on staff she would make his life "miserable."

5

Although filing nonfrivolous grievances is protected conduct, even assuming for purposes of this initial review that Plaintif's grievances were nonfrivolous, the "adverse actions" of which Plaintiff complains are little more than vague threats which would not deter a person of ordinary firmness from filing grievances. *See, e.g.*, *Miles v. Quainton*, No. 1:24-CV-53, 2024 WL 1363969, at \*7 (W.D. Mich. Apr. 1, 2024) (holding that threats to "'make Plaintiff's life . . . Miserable and Difficult,' jeopardize Plaintiff's ability 'to . . . survive,' make 'the remaining years of his incarceration . . . a heartache and miserable,' and that 'Plaintiff would regret it'" would not deter a person of ordinary firmness from exercising his First Amendment rights) (collecting cases).

Finally, Plaintiff alleges that on the date he filed a grievance concerning Defendant Benton's handling of the evidence from the October 16, 2025, cell-search incident, the evidence disappeared, and the disciplinary report was dropped. Clearly, there was no retaliation that occurred in this sequence of events since, rather than suffering an adverse consequence, a favorable one occurred for Plaintiff. The Court will dismiss Plaintiff's retaliation for failure to state a claim.

### 3. Grievances

Plaintiff alleges that Defendant McCalister ignored the grievance policy and that Defendant Plappert ignored his letter.

Prisoners do not possess a constitutional right to a prison grievance procedure. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (per curiam) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) ("there is no inherent constitutional right to an effective grievance procedure") (citing cases). For this reason, a defendant who ignores a prisoner's grievance does not violate the constitution. *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir.

6

2001) (holding plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional rights to an effective grievance procedure"). The Court holds that Plaintiff fails to state a claim related to these allegations.

### 4. Right to Privacy

Plaintiff alleges that by showing pictures of his prison-made sex toy to other officers Defendant Benton violated his right to privacy. Plaintiff has no right to privacy in contraband found in his cell. In fact, the Supreme Court held in *Hudson v. Palmer* that "prisoners have no legitimate expectation of privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells[.]" *Hudson v. Palmer*, 468 U.S. at 530; *see also United States v. Carson*, 796 F. App'x 238, 249 (6th Cir. 2019) (citing *Hudson* approvingly); *United States v. Cofield*, No. 120CR00481SCJRDC1, 2022 WL 18491752, at *3 (N.D. Ga. Sept. 30, 2022) (noting that Supreme Court precedent does not recognize "an inmate's expectation of privacy in contraband he possesses while detained"), *report and recommendation adopted*, 2023 WL 420704 (N.D. Ga. Jan. 26, 2023). Plaintiff, thus, fails to state a right-to-privacy claim.

### 5. Cruel and Unusual Punishment

Plaintiff alleges that he has been harassed and was refused the haircut/shave process, recreation, and access to phone calls.

The Eighth Amendment's prohibition against cruel and unusual punishment applies to inhumane conditions of confinement. *Farmer*, 511 U.S. at 834, 825. "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. at 832 (quoting *Hudson v. Palmer*, 468 U.S. at 517). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth

7

Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987).  Instead, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The verbal harassment Plaintiff alleges does not state a constitutional claim because "[a]llegations of verbal harassment and verbal abuse by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment."  *Johnson v. Moore*, 7 F. App'x 382, 384 (6th Cir. 2001) (citing *Ivey,* 832 F.2d at 955; *see also Scales v. Ky. State Reformatory*, No. 3:17CV-P384-JHM, 2018 WL 314830, at *3 (W.D. Ky. Jan. 5, 2018) ("verbal abuse, harassment, and threats are insufficient to state a constitutional violation under § 1983") (citations omitted); *McKinney v. Napier*, No. 3:17-CV-P28-DJH, 2017 WL 2295905, at *6 (W.D. Ky. May 25, 2017) (where prisoner alleged that guards "made fun of him for being a homosexual, yelled at him, and was disrespectful to Plaintiff on a daily basis . . . [and] made comments and slurs concerning homosexuals" he failed to state a constitutional claim).

As for Plaintiff's allegations that he was refused haircuts or shaves, recreation, and access to phone calls, he also fails to state a constitutional claim.  None of these are "[e]xtreme deprivations" required for an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. at 9.  He does not allege that he was denied complete access to any of these.  In fact, attached to his complaint is a document that appears to indicate that Plaintiff was approved to use a shaver.  Another document, a memorandum from Defendant Plappert to Plaintiff, states that the clippers and the phone were currently not working and that Plaintiff had refused recreation on three days in the week before she authored the memorandum.  This Court holds that Plaintiff fails to state a constitutional claim regarding these alleged deprivations. *See, e.g.*, *Watison v. Perry*, No. 1:20-00081, 2022 WL 18141399, at *7 (M.D. Tenn. Nov. 7, 2022) (holding that a "dirty cell, an unclean

toilet, no cleaning supplies or personal hygiene items for eight days, no opportunity to shower, shave, or have recreation for eight days, and no clothing or bedding except for a mattress and boxer shorts for eight days [] simply do not rise to the level of grave and extreme deprivations") (citing *Richmond v. Settles*, 450 Fed. App'x 448, 455 (6th Cir. 2011)), *report and recommendation adopted*, 2023 WL 116312 (M.D. Tenn. Jan. 5, 2023).

### 6. Write-up

Plaintiff alleges that Defendant Richie took "papers" from his "1983" and told Defendant Plappert which caused Plaintiff to be written up. The Court assumes for purposes of this initial review that Plaintiff believes that he was falsely written up.

However, Plaintiff cannot state a claim based on being falsely written up. "[T]he filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983." *Upshaw v. Jones*, No. 14-2534-JDT-TMP, 2015 WL 348626, at *3 (W.D. Tenn. Jan. 26, 2015) (quoting *Person v. Campbell*, No. 98–5638, 1999 WL 454819 (6th Cir. June 21, 1999). Thus, these allegations fail to state a claim.

### 7. "International Covenant"

The Court assumes that Plaintiff wishes to raise a claim under the United Nations Universal Declaration of Human Rights and the Convention Against Torture. Federal courts, however, do not recognize a private cause of action for prisoners pursuant to the Universal Declaration of Human Rights or any other declarations from the United Nations. *See, e.g.*, *Sosa v. Alvarez–Machain*, 542 U.S. 692, 734–35 (2004) (indicating that the Universal Declaration of Human Rights is aspirational only and "does not of its own force impose obligations as a matter of international law"); *Renkel v. United States*, 456 F.3d 640, 645 (6th Cir. 2006) (noting that there is no private

9

cause of action "under the Convention Against Torture because it is not self-executing"). Therefore, the Court will dismiss this claim.

### 8. PREA

Courts including this one have found that the PREA does not create a private cause of action. *See, e.g., Simmons v. Solozano*, No. 3:14CV-P354-H, 2014 WL 4627278 at *4 (W.D. Ky. Sept. 16, 2014) ("[T]he PREA creates no private right of action."); *Shaver v. Raymiller*, No. 25-11475, 2025 WL 2448471, at *2 (E.D. Mich. Aug. 25, 2025) (citing cases); *Peterson v. Burris*, No. 14-CV-13000, 2016 WL 67528, at *2 (E.D. Mich. Jan. 6, 2016) ("Numerous Courts that have addressed this issue have determined that the PREA provides no private right of action to individual prisoners.") (citing cases).  Consequently, Plaintiff cannot state a claim under the PREA.

### 9. State-Law Claim

"The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966).  Because the Court will dismiss all federal claims over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claim.  The state-law claim will be dismissed without prejudice.

## II. MOTIONS FOR PRELIMINARY INJUNCTION AND TRO

Although Plaintiff's complaint will be dismissed, the Court has considered Plaintiff's two motions for injunctive relief and his motion for a TRO which request a transfer to prevent further retaliation from staff and other inmates.  In his first motion (DN 7), he states that between October 10, 2025, until December 15, 2025, he was refused recreation and shaving privileges because he filed grievances.  He further alleges that he is being "targeted" by other inmates due to officers'

statements about his sexuality and that he is HIV positive, including having had hot water thrown on him by another inmate.

Plaintiff also states that on February 12, 2026, Defendant Benton told him, "'If I continue to file grievances he will make my life miserable.'" He also states that on February 19, Defendant Benton stated, "'If I get sued you'll spend it all on medical bills!'" According to Plaintiff, on the same date he was moved to a cell which had no running water, "'So I filed a sick call for being dehydrated.'" Among the attachments are a letter and an affidavit from the inmate, Christopher Duncan, who explained that he threw hot water on Plaintiff because he heard Defendant Benton say that Plaintiff was HIV positive.

In response, Defendants argue that Plaintiff has not shown likely success on the merits because the comments attributed to Defendant Benton are false and that Plaintiff has failed to show that Defendants knew of and disregarded an excessive risk to his health and safety. In support, Defendants offer the affidavit of Defendant Benton. Defendant Benton avers that he did not make the comments Plaintiff accuses him of in his filings; that he was not aware of Plaintiff's HIV status; that Plaintiff was not present when he found the sex toy in his cell; and that he had no control over Plaintiff's cell change.

Defendants also argue that Plaintiff has failed to show any adverse action that would deter a person of ordinary firmness from continuing to engage in the complained-of conduct as required for a retaliation claim. Additionally, they point out that Plaintiff actually refused recreation, the cell he was moved to that he alleges had no water actually did have working water, and Plaintiff was moved there on his own request, and Defendant Benton had no control over cell moves.[2]

---

[2] The logs attached to Plaintiff's motion show that on October 10, 2025, he refused recreation, the next week's log shows that he had recreation twice and on October 17, he refused; the next week he had recreation three times but refused it on October 23; the following week he had recreation twice and did not refuse recreation; the following week

11

Plaintiff's TRO motion (DN 12) seeks a TRO to stop Defendant Benton from harassing him. He does not add any information that is not already before the Court.

Plaintiff's second motion for injunctive relief (DN 13) asks for a transfer citing "retaliation" from the KSP mailroom because he did not receive Defendants' response until April 8, 2026, meaning he could not file a timely reply. Nevertheless, the Court's has considered both Plaintiff's TRO motion (DN 12) and his second preliminary motion (DN 13).

### A. Standard

Both a preliminary injunction and a TRO are extraordinary remedies "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "The same standard generally applies to the issuance of temporary restraining orders and preliminary injunctions." *Midwest Retailer Assoc., Ltd. v. City of Toledo*, 563 F. Supp. 2d 796, 802 (N.D. Ohio 2008). The Court must balance four factors in deciding whether to issue a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emp. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (internal quotation marks and citation omitted). The four preliminary injunction factors are "factors to be balanced, not prerequisites that must be met." *Six Clinics Holding Corp., II v. Cafcomp Sys.*, 119 F.3d 393, 400 (6th Cir. 1997). Motions seeking to obtain affirmative preliminary injunctive relief, like Plaintiff's motion here, must be more closely scrutinized than a preliminary injunction motion which seeks to maintain the status quo. *See, e.g.,*

---

he had recreation once and refused it once; the next week, he refused recreation three times; the week after, four times, the next week and the week after three times each. There are missing log sheets between December 1 and 12, 2025.

*Russell v. Tribley*, No. 2:10-CV-14824, 2011 WL 4387589, at \*10 (E.D. Mich. Aug. 10, 2011),

*report and recommendation adopted*, No. 10-CV-14824, 2011 WL 4396784 (E.D. Mich. Sept. 21,

2011) (citing *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005); *Johnson v. Kay*, 860

F.2d 529, 540 (2d Cir. 1988)).

### B. Analysis

### *1. Likelihood of Success*

Plaintiff alleges that he was subjected to ridicule, assault from another inmate, and

harassment, was refused "haircuts/shave process" because officers believed he was HIV positive,

recreation, and access to phone calls.  All of these claims have been considered above, and the

Court has determined that they do not state a claim upon which relief may be granted.

Additionally, Defendants' evidence in support of their response suggest that Plaintiff's description

of events may not be completely accurate.  Thus, Plaintiff has not shown a likelihood of success.

### *2. Irreparable Injury*

Plaintiff relies on descriptions of past events in his request for injunctive relief.  Allegations

of past behavior generally are not sufficient to satisfy this prong of the PI/TRO analysis.  *See, e.g.*,

*Basey v. Mooneyham*, 172 F. App'x 582, 584 (5th Cir. 2006) (denying request for preliminary

injunction for transfer where prisoner only alleged that he had been previously assaulted by prison

officials); *Clemons v. Wexford Health Sources*, No. 20 C 50330, 2020 WL 13816796, at \*6 (N.D.

Ill. Oct. 5, 2020) (denying transgender prisoner's preliminary injunction motion requesting transfer

to women's prison, finding that "vague references to past harm [are] insufficient to suggest that

she is in imminent danger").

### 3. Substantial Harm and Public Interest

Finally, the third and fourth elements of the analysis also weigh against granting preliminary injunctive relief. It is generally in the best interests of all if courts refrain from becoming involved in day-to-day prison operations. Moreover, the Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is viewed as against the public interest. *Lang v. Thompson*, No. 5:10-CV-379-HRW, 2010 WL 4962933, at *7 (E.D. Ky. Nov. 30, 2010) ("[J]udicial interference is necessarily disruptive, and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context.").

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motions (DNs 7, 12, and 13) are **DENIED**.

For the foregoing reasons, the Court will, by separate Order, dismiss this action.

Date: April 22, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:    Plaintiff, *pro se*
4414.009